UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


NATIONWIDE INSURANCE COMPANY                                    PLAINTIFF

v.                                        CIVIL ACTION NO. 3:05CV615DPJ-JCS

MICHAEL CLARK AND NANCY CLARK                              DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the Court on motion of Plaintiff Nationwide Insurance Company

(Nationwide) for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Defendants

Michael and Nancy Clark have responded in opposition.  The Court, having considered the

memoranda and submissions of the parties, along with the pertinent authorities, concludes that

Plaintiff's motion should be granted.

I.        PROCEDURAL HISTORY/FACTS

This tragic case stems from a dispute involving a homeowners insurance policy issued by

Nationwide to Michael and Nancy Clark for their home located in Brandon, Mississippi.  On

February 14, 2005, a fire occurred at the residence, and the Clarks filed a claim with Nationwide

for coverage under the policy.  Defendants' son Adam Clark was subsequently indicted for

felony arson related to this fire,  pled guilty, and was convicted.

Nationwide takes the position that because Adam Clark resided at the home at the time of

the fire and intentionally set the fire, coverage is excluded under the terms of the policy.

Specifically, the subject policy provides the following relevant definitions:

Definitions

2. "YOU" and "YOUR" refer to the named insured shown on this policy who resides at the residence premises. These terms also mean your spouse who resides at the same residence premises.

4. "INSURED" means you and the following residents of your household at the residence premises:
    a) your relatives.
    b) any other person under age 21 and in the care of you or your relative.

7. "RESIDENCE PREMISES" means the one, two, three, or four-family dwelling, other structures and ground located at the mailing address shown on the Declarations unless otherwise indicated.

The policy further provides the following property coverage exclusion:

Property Exclusions

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

    g) Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts, intentional acts include criminal acts. Such acts exclude coverage for all insureds.

On October 12, 2005, Nationwide filed this action against Michael and Nancy Clark seeking a declaration that there is no insurance coverage under the Clarks' homeowners policy for the fire. The Clarks then filed a counterclaim against Nationwide, asserting various causes of action stemming from the denial of coverage.

Following discovery, Nationwide filed this motion, arguing that under the clear and unambiguous terms of the policy no coverage exists for the fire, and consequently, it is entitled to summary judgment on both its claim for declaratory judgment and Defendants' counterclaims.

In response, the Clarks do not dispute that Adam Clark lived in their home at the time of the fire or that he pled guilty to the crime of arson.  They do, however, insist that they did not have any "role or foreknowledge of the subject arson nor did they have any knowledge of Adam Clark's predisposition to commit arson."

The Clarks maintain that summary judgment should be denied for the following reasons: 1) Nationwide waived its right to rely on the intentional acts exclusion due to its payment of the Clarks' mortgages; 2) the policy language is vague and ambiguous and should be construed against Nationwide, the drafter; 3) as innocent insureds, the Clarks should be provided coverage under the intentional acts exclusion; and 4) Nationwide's intentional acts exclusion should be held void as against public policy.  While the Court recognizes the significant misfortune that has befallen the Clarks, their arguments are legally insufficient and will be addressed in turn.

## II.    ANALYSIS

### A.    Waiver Based on Nationwide's Payment to the Mortgagee

Wells Fargo Bank (Wells Fargo) was the named mortgagee on a first and second mortgage on the Clarks' property, and it is undisputed that Nationwide paid Wells Fargo after the fire.  The Clarks claim that Nationwide therefore waived its right to rely on the intentional acts exclusion as to the Clarks because Wells Fargo's right to recover was dependant upon the Clarks' right to recover.

A "waiver is a voluntary and intentional relinquishment of a known right or conduct that warrants an inference of such a relinquishment."  *Chapman v. Safeco Ins. Co. of Am.,* 722 F. Supp. 285, 292 (N.D. Miss 1989) (*quoting Highlands Ins. Co. v. Allstate Ins. Co.,* 688 F.2d 398, 404 (5th Cir. 1988)).  "To establish a waiver, there must be shown an act or omission on the part

3

of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived." *Titan Indem. Co. v. Hood,* 895 So. 2d 138, 150-51 (Miss. 2004) (*citing Ewing v. Adams,* 573 So. 2d 1364, 1369 (Miss. 1990)).  Accordingly, the question is whether Nationwide voluntarily relinquished its right to rely on the intentional acts exclusion when it paid Wells Fargo.

Nationwide maintains that it had no choice but to pay Wells Fargo under the mortgage clause contained in the policy.  That clause provides:

> Mortgage Clause.  The word "mortgagee" includes trustee.  If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear.  If more than one mortgagee is named, the order of payment will be the same as the order or precedence of the mortgages.  If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:
>
> > a) notifies us of a change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.
> >
> > b) pays premium due under this policy on our demand, if you neglected to pay the premium.
> >
> > c) submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so.  Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

The parties dispute whether this constitutes a "loss payable" or "open mortgage" clause versus a "standard" or "union" mortgage clause.  According to the Clarks, this is nothing more than a "loss payable" clause whereby "the mortgagee is only entitled to receive the amount due him on his mortgage out of the funds recovered by or due to the insured." *Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So. 2d 404, 407 (Miss. 1975).

4

Nationwide of course disagrees claiming that its policy language constitutes a "standard" or "union" mortgage clause.  Such clauses create independent contracts between the insurer and the mortgagee such that "the mortgagee's right to recover will not be invalidated by the act or negligence of the mortgagor of the insured's property."  *Id.*  Said differently, the mortgagee's right to recover under a "standard" mortgage clause remains "unaffected by any conditions which invalidate[] the policy as to the mortgagor."  *Necaise v. Oak Tree Sav. Bank*, 645 So. 2d 1311, 1316 (Miss. 1994).

The Clarks submit that "the phrase 'as interests appear' or 'as their interests appears' without any explanatory language is specific to 'loss payable' clauses."  However, the Clarks' authority for this argument is taken out of context.  "Interests" clauses such as those cited in the Clarks' memorandum generally refer to debts and appear in varying forms in both "standard" and "loss payable" mortgage clauses.  *See, e.g.*, *Hartford Fire Ins. Co.*, 313 So. 2d at 405-08 (examining "standard" and "loss payable" clauses in subject policy, both of which contained "interests" clauses).[1]

In addition, the Clarks assert that this Court has already declared that Nationwide's mortgage clause is a "loss payable" clause in *Nationwide Mutual Fire Insurance Co. v. Dungan*, 634 F. Supp. 674, 680 n.3 (S.D. Miss. 1986).  While dicta in *Dungan* stated that the clause "appear[ed]" to be a "loss payable" clause, the case does not provide the entire text of the mortgage clause in issue.  Moreover, the quoted portions of the policy are slightly different from the subject clause.  *Id*. Ultimately, it is impossible to know whether the *Dungan* clause is

---

[1]Noting that the clause "as their interests may appear" has been interpreted as recognizing "a separate insurable interest of the mortgagee," one commentator nevertheless states that this is a false distinction.  4 Lee R. Russ & Thomas F. Segallia, *Couch on Insurance* § 65:9 (3d ed. 2005)(hereinafter "Couch").

materially the same as the subject clause written some twenty years later.  *Dungan* is further distinguishable from this case in that the mortgagee was not listed in the policy, and therefore Mississippi Code Annotated § 83-13-9 (2000) did not apply (discussed *infra*).

Finally, the Clarks argue that the separate rights of Wells Fargo are not triggered unless one of three contingencies occur.  Nationwide responds by stating that Wells Fargo's rights as the mortgagee are secure unless it fails to perform one of those enumerated duties.  Either way, the clause creates separate duties as to the mortgagee which distinguishes it from those "loss payable" clauses where the mortgagee merely stands in the shoes of the insureds.  For example, compare the  "loss payable" and "standard" mortgage clauses examined in *Hartford Fire Insurance Co.,* 313 So. 2d at 405.

Furthermore, the Court notes that the subject policy is nearly identical to the one reviewed by the Mississippi Supreme Court in *Lumbermens Mutual Casualty Co. v. Thomas*, 555 So. 2d 67, 69-70 (Miss. 1989). In *Lumbermens*, the court observed, in dicta, that the policy contained a "typical standard union mortgage clause" and complied with Mississippi Code Section 83-13-9 (discussed *infra*).  *Id.* at 69;[2] *see also Home Sav. of Am., F.S.B. v. Continental Ins. Co.,* 104 Cal. Rptr. 2d 790, 797 (Cal. Ct. App. 2d Dist. 2001) (interpreting materially identical mortgage clause and finding that "[s]o far as we are aware, every court to consider the matter has found the ISO-type clause to be a standard loss payable clause").

---

[2]The subject policy differs from the *Lumbermans* policy in two ways.  First, where the Nationwide clause states "*a* loss payable under Coverage A or B," the *Lumbermans* clause states "*any* loss payable under Coverage A or B."  *Id.*  Second,  the Nationwide clause states "that denial *will* not apply," while the *Lumbermans* clause states "that denial *shall* not apply."  *Id.*  These two differences are legally insignificant with respect to the issues before the Court.

While this appears to be a "standard" mortgage clause, the parties' varying interpretations

matter little in light of Mississippi Code Section 83-13-9.[3]  Under this statute, a "standard" clause

must be attached to fire insurance policies taken out in the State of Mississippi.  *Id.*; *see Carter v.*

---

[3]     Each fire insurance policy on buildings taken out or renewed on or after July 1, 1989, by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:

Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as _____ mortgagee (or trustee), as _____ interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; and in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same. The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee) and, unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void. This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for thirty (30) days after notice to the mortgagee (or trustee) of such cancellation and shall then cease, and this company shall have the right on like notice to cancel this agreement. In case of any other insurance upon the within described property, this company shall not be liable under this policy for a greater proportion of any loss or damage sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee, or otherwise. Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all security held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of _____ claim. Nothing in the foregoing prescribed form shall be construed to in any manner modify the provisions of Section 83-13-5.

Miss. Code Ann. § 83-13-9.

*Allstate Indem. Co*., 592 So. 2d 66, 71 (Miss. 1991) (observing that section 83-13-9 contains

standard mortgage clause); *Necaise*, 645 So. 2d at 1315 ("[S]ubject matter of Miss. Code Ann. §

83-13-9 (1991) is the standard union mortgage clause."); *Weems v. American Sec. Ins. Co.,* 450

So. 2d 431, 436 (Miss. 1984) (same).

       According to the Fifth Circuit Court of Appeals:  "The Mississippi Supreme Court has

held that the mortgage clause contained in section 83-13-9 becomes part of every fire insurance

policy 'irrespective of any mortgage clause inserted by the insurance company to the contrary;

[section 83-13-9] constitutes the only mortgage clause that can be placed in the policy.'"

*Nationwide Mut. Fire Ins. Co. v. Dungan*, 818 F.2d 1239, 1244 (5th Cir. 1987) (*quoting Bacot v.*

*Phenix Ins. Co.*, 50 So. 729, 732 (Miss. 1909)); *see also Highlands Ins. Co. v. Allstate Ins. Co.,*

688 F.2d 398, 403 (5th Cir. 1982) ("[T]his clause automatically becomes a part of a fire

insurance policy insuring property on which there is a mortgage when the policy contains a loss

payable clause for a mortgagee."); *Nat'l Sec. Fire & Cas. Co. v. Mid-State Homes, Inc.,* 370 So.

2d 1351, 1353 (Miss.1979).[4]

       Contrary to the Clarks' argument that Nationwide waived the intentional acts exclusion

by treating the mortgagee differently than the mortgagor, Nationwide was required to treat Wells

Fargo differently.  Pursuant to the contract language and section 83-13-9, Nationwide had an

independent contractual duty to Wells Fargo that could not be extinguished by the acts of the

---

    [4]The Court notes that some Mississippi cases have held that section 83-13-9 creates an equitable lien in
favor of the mortgagee.  However, unlike the present case, the policies at issue did not name the mortgagee as loss
payee.  *See, e.g., Lititz Mut. Ins. Co. v. Miller*, 50 So. 2d 221, 225 (Miss. 1951).  The Fifth Circuit Court of Appeals
shed light on this distinction when it construed the language of section 83-13-9 and determined that the mandatory
provisions of the statute do not apply to unnamed mortgagees.  *See Dungan*, 818 F.2d at 1245 (*citing Merchants
Nat'l Bank v. Southeastern Fire Ins. Co.*, 751 F.2d 771, 780 n.6 (5th Cir. 1985)) ("[A]n unnamed mortgagee has the
same rights as an ordinary equitable lien holder.").

insureds.  Paying Wells Fargo pursuant to that independent duty did not manifest an intent to waive the intentional acts exclusion as to the Clarks.  *See Neises v. Solomon State Bank*,  696 P.2d 372, 380 (Kan. 1985) (noting that payment by insurer to mortgagee under a standard mortgage clause "did not waive any defenses it might have had as to its liability to the party who appeared as the mortgagor in the policy");  *see also* 13 *Couch* § 194:54.

   B.     **Policy Language**

        The Clarks submit that the policy language, including the intentional acts exclusion and the definition of an "insured," is confusing and ambiguous and should be interpreted by the Court as providing coverage to the Clarks for their loss.  Nationwide, on the other hand, asserts that the policy language is clear and unambiguous and should be enforced as written.

        The trial court, not the jury, must determine the meaning and effect of an insurance contract if the contract is clear and unambiguous.  *Jackson v. Daley,* 739 So. 2d 1031, 1041 (Miss. 1999) (*citing Overstreet v. Allstate Ins. Co.,* 474 So. 2d 572, 575 (Miss. 1985)).

        Mississippi law recognizes the general rule that provisions of an insurance contract are to be construed strongly against the drafter.  *J & W Foods Corp. v. State Farm Mut. Auto Ins. Co.*, 723 So. 2d 550, 552 (Miss. 1998) (*citing Nationwide Mut. Ins. Co. v. Garriga,* 636 So. 2d 658, 662 (Miss. 1994); *Williams v. Life Ins. Co. of Ga.,* 367 So. 2d 922, 925 (Miss. 1979)).  An insurance policy is ambiguous "when the policy can be interpreted to have two or more *reasonable* meanings."  *J & W Foods,*  723 So. 2d at 552 (emphasis added).  "When the language of a policy is subject to more than one reasonable interpretation, this Court will apply a construction permitting recovery."  *Id.*

On the other hand,"[t]he mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Burton v. Choctaw County*, 730 So. 2d 1, 8 (Miss. 1999). "A court must effect 'a determination of the meaning of the language used, not the ascertainment of some possible but unexpressed intent of the parties.'" *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997) (*quoting Cherry v. Anthony, Gibbs, Sage,* 501 So. 2d 416, 419 (Miss. 1987)).  Moreover, an insurance policy is a contract between the insurer and the insured, "'with the rights and duties set out by the provisions of the insurance policy.'"  *Sennett v. U.S. Fidelity & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000) (*quoting  Hare v. State*, 733 So. 2d 277, 281 (Miss. 1999)).  As such, "insurance policies which are clear and unambiguous are to be enforced according to their terms as written," and "the plain terms of the insurance contract should be binding and controlling." *Id.*

The Clarks turn to the language of the intentional acts exclusion and offer a number of alternative interpretations in the hopes of creating an ambiguity.[5]  As review, the relevant policy provision reads as follows:

> g) Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts, intentional acts include criminal acts. Such acts exclude coverage for all insureds.

The Clarks first contend that this exclusion is ambiguous because it is not clear who constitutes "an insured."  However, "insured" is a defined term in the Property Conditions portion of the contract:

---

[5]The Clarks also assert that Nationwide's payment to Wells Fargo while denying coverage to them under the intentional acts exclusion proves that the policy is ambiguous as to the intentional acts exclusion.  The Court has fully addressed the basis for the payment to Wells Fargo and declines to revisit the issue.

4.  "INSURED" means you and the following residents of your household at the residence premises:

> a) your relatives.

> b) any other person under age 21 and in the care of you or your relative.

This is a standard definition of "insured," and there is no reasonable interpretation of the clause that would exclude Adam Clark.  He was indisputably a resident at the subject premises and was the Clarks' "relative[]."  *See Hall v. State Farm Fire & Cas. Co.*, 937 F.2d 210, 214 (5th Cir. 1991) (use of defined term "insured" in intentional acts exclusion not ambiguous).

The Clarks observe, however, that the Liability Coverages section contained in Section II of the policy has a different definition of "insured."  Even if the definition in Section II could somehow apply to Section I,[6] it would not create an alternative construction allowing recovery. Both Section I and Section II define "insured" to include relatives who reside at the subject property.  Adam Clark satisfies both definitions.

The Clarks also argue that Adam Clark was not an insured because he did not have an insurable interest in the house or the damaged personal property.  However, the Court cannot ignore the use of the defined term "insured" which covers Adam Clark.  Had the parties intended to limit "an insured" to insureds with insurable interests, they could have easily added that language to the exclusion.

---

[6]Section II of the policy contains "ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES."  By the express terms of this section, these definitions apply exclusively to Section II and cannot therefore create an ambiguity with respect to the definition of "insured" that applies to the Property Coverages section of the policy--Section I.

The Clarks also find ambiguity in the term "such acts," which begins the second sentence of the exclusion.  However, "such acts" clearly refers to the acts described in the preceding sentence (which include "criminal acts" such as arson).  Although there is no ambiguity and therefore no need to turn to the rules of construction, "modifying clauses generally modify the nearer, rather than the more remote, antecedent."  2 *Couch* § 22:5.[7]

Finally, "[s]uch acts will exclude coverage *for all insureds*."  (Emphasis added).  The Clarks rhetorically ask:  "who are all insured?"  More to the point, they argue that the policy is not clear as to whether coverage is "excluded for all insured who were involved in the incident or all people who were insured for the subject claim."  What they suggest is that the sentence "[s]uch acts exclude coverage for all insureds" could be read in conjunction with the term "an insured" in the preceding sentence to mean "such acts exclude coverage for all insureds who were involved in the intentional act."

Unlike the Clarks' attempt to parse other portions of the policy, their interpretation of this sentence, if reasonable, would yield coverage and therefore create an ambiguity.  However, the Court must strive to give each provision meaning as written and cannot add or subtract terms in order to achieve an unreasonable interpretation that was not anticipated by the parties.  If the intent was to limit the exclusion to the insured who acted intentionally, the second sentence could have easily stated that coverage is excluded to the "insured who committed the intentional act."  Instead, it reads that intentional acts "exclude coverage for all insureds."  The common sense

---

[7]The Clarks also claim that the use of the term "act" in both the singular and plural is confusing and ambiguous.  Read in the context of the exclusion, the use of "act" or "acts" creates no ambiguity and yields no reasonable alternative construction that would provide coverage to the Clarks.

meaning of the sentence is that all insureds will be excluded if an insured commits an intentional act.

The Clarks have failed to demonstrate that the intentional acts exclusion is "subject to more than one reasonable interpretation."  *J & W Foods,* 723 So. 2d at 552.  While the Clarks have strenuously argued that the policy, and the intentional acts exclusion in particular, are confusing, they have not articulated a reasonable alternative interpretation which would provide them coverage.  The Court finds that the policy provisions at issue are unambiguous and preclude coverage.

###    C.    **Innocent Insureds**

According to the Clarks, Mississippi case law "suggests that innocent insureds will be given coverage in the context of an intentional acts exclusion if they are innocent unless the insurer provides specific, unambiguous provisions to the contrary."  The Clarks seek support in cases from Mississippi federal and state courts.  *McFarland v. Utica Fire Ins. Co. of Oneida County, N.Y.*, 814 F. Supp. 518, 526 (S.D. Miss. 1992) (finding intentional acts exclusion was ambiguous and did not bar recovery of innocent insured for damage resulting from acts of co-insured); *Dunn v. State Farm Fire & Cas. Co.*, 711 F. Supp. 1362, 1369 (N.D. Miss. 1988) (innocent spouse could recover interest in insured property despite her husband's arson); *McGory v. Allstate Ins. Co.*, 527 So. 2d 632, 638 (Miss. 1988) (innocent insured could recover).

As these cases observe, intentional acts exclusions will preclude coverage for an innocent co-insured if they include a non-severability clause.  *See McFarland v. Utica Fire Ins. Co. of Oneida County, N.Y.*, No. 93-7936, 1994 WL 16464174, *5 (5th Cir. Jan. 6, 1994) (recognizing Mississippi law that absent a non-severability clause, an innocent insured spouse could recover

13

under the insurance policy); *McFarland*, 814 F. Supp. at 526 ("[D]efendant Oneida could have cured this ambiguity through . . . the addition of a non-severability clause."); *McGory*, 527 So. 2d at 638 (noting that *absent* a non-severability clause "the innocent spouse or business partner insured can recover on the policy").

In *McGory*, the court described a non-severability clause as a "clause[] excluding coverage to both co-insureds because of the deliberate wrongful act of one co-insured." 527 So. 2d at 638. Nationwide asserts that the intentional acts exclusion in the Clarks' policy contains a non-severability clause because it states: *"Such acts exclude coverage for all insureds."* (Emphasis added). The Clarks maintain, without supporting authority, that this sentence is not a non-severability clause and is instead confusing and vague. Having already held that this sentence is not ambiguous, the Court further holds that it meets the definition of a non-severability clause in *McGory*. 527 So. 2d at 638.

The inclusion of a non-severability clause distinguishes *McFarland* where the court considered the following intentional acts exclusion: "Intentional Act. We do not pay for loss which results from an act committed by or at the direction of an insured and with the intent to cause a loss." 814 F. Supp. at 522. The court found this policy language ambiguous and subject to "more than one interpretation." *Id.* at 524-25. The *McFarland* clause did not include an equivalent to the sentence, "[s]uch acts exclude coverage for all insureds." The significance of this distinction becomes quickly apparent when viewed in light of the *McFarland* court's examination of an intentional acts exclusion in *Hall v. State Farm Fire and Casualty*. The policy in *Hall* read as follows:

14

Intentional Acts.  If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.

937 F. 2d at 213.  In its final analysis, the *McFarland* court explained that

[t]he defendant Oneida could have cured this ambiguity through clearer or more precise language, as found in *Hall v. State Farm Fire & Casualty Co.*, *supra*, or, alternatively, through the addition of a non-severability clause. *See McGory*, 527 So. 2d at 638; 11 A.L.R. 4th 1228, 1231. But, defendant's policy contains no non-severability clause. Instead, on page 1 of the policy, there is found language which states that all insureds under the policy are "separate insureds."

*McFarland*, 814 F. Supp. at 526.  Nationwide's  intentional acts exclusion, and the non-severability clause contained therein, are comparable to the policy language in *Hall* and operate to preclude coverage to innocent insureds such as the Clarks.

The Clarks also claim that if the intentional acts exclusion includes a non-severability clause, then it is inconsistent with two other provisions in the policy and is therefore ambiguous. The Clarks first note that Section II of the policy covering "Liability Coverages" includes a severability clause which reads: "Severability of Insurance.  This insurance applies separately to each insured.  This condition does not increase our limit of liability for one occurrence."

Similarly, the Clarks contend that the "Insurable Interest and Limit of Liability" condition operates as a severability clause.  That provision states:

Property Conditions

1.  Insurable Interest and Limit of Liability.  Even if more than one person has an insurable interest in the property covered, we will not be liable:

a) to the insured for more than the insured's interest.

b) for more than the limit of liability.

15

First, the Court does not agree that the "Insurable Interest and Limit of Liability" provision is a severability clause.  Had Nationwide wished to include a severability clause in the property section of the policy, it would have replicated the severability clause used in the liability portion of the policy, referenced above.  Second, it is apparent that the purpose of the "Insurable Interest and Limit of Liability" clause is just that, a limit on Nationwide's duty to pay twice for the same loss.  Nowhere does this clause state that the insureds' interests are severed.

Even if the "Insurable Interest and Limit of Liability" clause could be viewed as a severability clause, neither it nor the "Severability Clause" found in the "Liability Conditions" would create an ambiguity because general provisions must fall to more specific provisions.  *See Union Planters Bank, Nat'l Ass'n v. Rogers*, 912 So. 2d 116, ¶10 (Miss. 2005) ("[S]pecific language controls over general inconsistent language in a contract.").  Here, the two severability clauses suggested by the Clarks are general in nature.  In contrast, the non-severability clause in the relevant intentional acts exclusion is specific and narrow in that it is a part of, and applies only to, that specific exclusion.

Finally, a contrary ruling would, as Nationwide states, turn *McFarland* on its head.  In *McFarland*, the policy contained a general severability clause.  To overcome the general severability clause, both this Court and the Fifth Circuit Court of Appeals noted that the insurer would be required to provide a specific non-severability clause.  *McFarland*, 1994 WL 16464174 at *5; *McFarland*, 814 F. Supp. at 526.  Nationwide provided such a clause, and the Clarks cannot now argue that the addition of the non-severability clause is ambiguous and confusing because it conflicts with the severability clause.

D.      **Public Policy of the State of Mississippi**

Finally, the Clarks argue that the public policy of Mississippi is that "policyholders should be provided coverage for which they pay a premium." They maintain that because they suffered a catastrophic loss which was not in any way their fault, Nationwide's intentional acts exclusion should be held void as against public policy.

While there is no dispute that the Clarks' losses were severe and in no way their fault, public policy will not void their contract. The appellate courts of Mississippi have repeatedly applied intentional acts exclusions. *See Lewis v. Allstate Ins. Co.*, 730 So. 2d 65 (Miss. 1998) (applying an intentional acts exclusion); *Rogers v. Allstate*, 2006 WL 399252 (Miss. Ct. App. 2006) (same); *Thomas v. State Farm Fire & Cas. Co.*, 2003 WL 21448878 (Miss. Ct. App. 2003) (same). Nationwide suggests that this Court should refrain from holding that Mississippi public policy would void this exclusion when the Mississippi Supreme has never seen fit to do so. The Court agrees.

III.    **CONCLUSION**

The Court finds that Nationwide's motion for summary judgment should be granted. In addition, the Clarks' response focuses entirely on establishing coverage under the policy. The Clarks have not presented any record evidence to rebut Nationwide's motion with respect to the Clarks' counterclaims. Absent any attempt to rebut this portion of Nationwide's motion, the Clarks' counterclaims are likewise due to be dismissed.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure

58.

**SO ORDERED AND ADJUDGED** this the 13th day of December, 2006.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

18